# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WINFORD MELVIN,** | : | **Civil No. 4:08-CV-1818** |
| | : | |
| **Petitioner,** | : | **(Judge Jones)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **MICHAEL HARLOW, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

## I.    Introduction

This habeas corpus petition presents the clash of two fundamental legal principles, a conflict which plays out against the backdrop of a brutal shooting, and protracted state court litigation, litigation that has spanned 14 years.

One of these legal principles is a statutory prerequisite to a state prisoner seeking habeas corpus relief in federal court. By law, a prisoner seeking habeas relief must first "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The instant case presents a model of an unexhausted petition, since all of the parties concede that there is still pending in the state courts an unresolved state court petition brought under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541 et seq. ("PCRA"), which raises issues that are identical to some of those set forth in the instant federal habeas corpus petition.

Yet, this case also casts in stark relief equally important principles of timeliness and finality in litigation, legal tenets which guide this Court and motivate our system of justice. " [T]he Federal Rules are meant to be applied in such a way as to promote justice. <u>See</u> Fed. R. Civ. P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion . . . ." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir 1998).

Winford Melvin's case presents a collision of these two principles. Melvin's petition is undeniably unexhausted; yet the Petitioner correctly notes that the lapse of 14 years in this litigation is a circumstance which may, in appropriate instances, excuse this exhaustion requirement. In light of the fact that this is both an undeniably unexhausted federal habeas petition, and one which has been the subject of extensive delay, the question before this Court is how best to address and reconcile these competing values promoted by the exhaustion doctrine and the institutional mandate that courts promote fair, but swift, justice.

Predictably, the parties to this protracted litigation have competing and divergent views regarding how these values should be reconciled. The Respondents urge us to dismiss this petition as unexhausted. The Petitioner, in turn, argues that we

should deem exhaustion futile and proceed to our own independent assessment of the merits of the petition.

We choose a middle path in light of recent developments in this case, developments which in our view reveal that "previously-stalled state proceedings have resumed" and, "there is reliable evidence that the state action has been reactivated." Walker v. Vaughn, 53 F.3d 609, 615 (3d Cir.1995); see also Wallace v. Dragovich, 143 F.App'x. 413, 418 (3d Cir. 2005); Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir.2002). In this setting, "[w]hen a previously stalled state action begins moving again, we generally hold that a state remedy is, once again, available, and that the petitioner should exhaust it." Luckett v. Folino, 264 F.App'x 171, 173(3d Cir. 2008)(citations omitted). Therefore, for the reasons set forth below, it is recommended both that: (1) Respondents' request to dismiss this petition as unexhausted be denied; and (2) the Petitioner's request that we find exhaustion to be excused should also be denied. Instead, it is recommended that this is a case where the proper course of action would be to stay the federal habeas petition and hold it in abeyance pending completion of the state criminal litigation. However, in recognition of the delays which have previously plagued this state court litigation, it is further recommended that the parties be required to provide status reports every 90 days on the progress of

this state PCRA litigation so this court can make an informed judgment regarding whether to excuse or enforce this exhaustion requirement at some time in the future.

## II.     Statement of Facts and of the Case

### A.     Melvin's Murder Conviction and Direct Appeal

This case began twenty years ago with a killing. On July 16, 1989, three members of Winford Melvin's immediate family were shot. Melvin's step-daughter was killed by a gunshot wound to the head. Melvin's step-son was permanently paralyzed following a gunshot wound to his neck. Melvin's wife also suffered serious gunshot wounds. After shooting his family, Melvin allegedly menaced and threatened a neighbor who called police, before attempting to turn the firearm upon himself and commit suicide.

The following day, July 17, 1989, Melvin was arrested and charged with homicide, attempted homicide and aggravated assault as a result of this fatal shooting spree. Over the next year, Melvin remained continuously in custody, held at either the Fulton County Prison, or involuntarily committed to Mayview State Mental Hospital. Indeed, by June of 1990, Melvin's counsel placed the court on notice of Melvin's fragile mental health by filing a notice of insanity in the pending state homicide prosecution.

Following this filing, the Commonwealth and defense counsel reached agreement on the terms of a plea agreement in Melvin's case. Under the terms of this agreement, Melvin pleaded *nolo contendere* to third degree murder and two counts of aggravated assault for the murder of his step-daughter and the shooting of his wife and step-son. On November 29, 1990, Melvin was sentenced for his role in these offenses. Melvin is currently serving an aggregate 20-to-40 sentence following the entry of these guilty pleas.

Melvin then began his decade-long foray into the state legal system by appealing this conviction and sentence. In this direct appeal, Melvin presented two arguments to the Pennsylvania Superior Court, asserting: (1) that the sentence imposed upon him constituted an abuse of discretion because it was excessive; and (2) that the interests of justice would be served by permitting him to withdraw his *nolo* pleas. The Superior Court of Pennsylvania affirmed Melvin's conviction and sentence on May 17, 1991. The Supreme Court then denied Melvin's petition for allocator on January 14, 1992.

### B.     Melvin's State Post-Conviction Litigation

Four years later, on June 26, 1996, Melvin filed a *pro se* petition under Pennsylvania's Post-Conviction Relief Act, 42 Pa. C.S. §§ 9541 et seq., ("PCRA"), in the state trial court raising a series of legal claims. One week after this initial filing,

on July 2, 1996, the state trial court issued an order instructing Melvin to file an amendment to his *pro se* petition clarifying the factual basis for his claims. Melvin responded with a filing that requested the appointment of counsel, identified his wife as the witness with a repressed memory, alleged conspiratorial misconduct involving bribery on the part of his trial counsel, the prosecutor, and the trial court, and asserted 17 different ways in which his trial counsel had failed to represent him adequately.

On August 13, 1996, the state trial court appointed Shawn Meyers, Esquire to represent Melvin in connection with his state post-conviction litigation, and instructed Myers to file an amended PCRA petition on behalf of Melvin, stating in part that: "Petitioner lists approximately eighteen separate errors regarding his privately retained counsel. The Court not being able to decipher what the real issue is, the Court will give Court appointed counsel ninety (90) days to file a concise statement of matters complained of in the PCRA from the time of their appointment." Thus, within six weeks of Melvin's initial *pro se* PCRA filing, the trial court had appointed counsel for Melvin, and directed the preparation of a coherent, comprehensive Post-Conviction Relief Act petition. What then ensued was more than a decade of chaos, conflicting accusations, competing claims, and chronic delays, a confused and confusing course which for a time left Melvin's state case in a legal limbo.

As is often the case when litigation goes awry each party blames the other for these delays. For his part, Melvin characterizes the course of the state litigation in Shakespearean terms, calling it, "a tale told by an idiot, full of sound and fury, signifying nothing." (Doc. 34, p. 4.) In Melvin's view, he is "not responsible for the delay." (Id., p.5.) Instead, Melvin attributes the delay to malfeasance and negligence by four separate PCRA counsel, two of whom he claims "did nothing." (Id.) As for the other two PCRA counsel, Melvin insists that they "did little more than seek continuances and extensions of time" during their five and six years of representing Melvin. (Id.)  In support of these claims, Melvin cites numerous extensions sought by his four PCRA counsel, alleges repeated failures by counsel to respond to more than 80 letters written by Melvin between 2004 and 2008, and the complete and on-going failure by any counsel to submit a coherent, comprehensive amended PCRA petition in this matter from 2000 through 2008. (Id., pp.  9-17.)

In stark contrast, the Respondents claim that this delay was entirely a function of bizarre litigation choices made by Melvin. Thus, according to Respondents, Melvin's refusal to cooperate with his counsel led one counsel to withdraw from this case in 2001. (Doc. 33, p. 6.) After the state court appointed new counsel in the PCRA proceedings, in March and May 2002 Melvin responded by filing a *pro se* petition for writ of habeas corpus in this Court and a second *pro se* PCRA petition in the state trial

court alleging, among other things, that both of Melvin's PCRA counsel had rendered constitutionally defective assistance of counsel. (Id., p.7.) On July 31, 2003, Melvin's initial federal habeas petition was dismissed by this Court on exhaustion grounds, with this Court finding that Melvin himself was largely responsible for the delay in the state court PCRA proceedings due to his "unreasonable lack of cooperation in the face of repeated beseeching entreaties from [PCRA counsel]." (Id., p.8.) This Court then granted a motion for reconsideration filed by Melvin, and on November 21, 2003, entered an Order approving a stipulation signed by the parties that the first habeas petition would be withdrawn without prejudice to renewing this action after the completion or failure of PCRA proceedings in state court. (Id., p. 9.) The Respondents further insist that between 2004 and 2008 numerous efforts were made to advance this litigation, efforts that were often frustrated by Melvin's voluminous *pro se* filings, filings that freely mingled habeas claims with civil litigation between Melvin and an organization known as the Pen Mar Nudest Club, Inc. (Id., 9-11.)

## C. Melvin's Current Federal Habeas Petition and the Current Status of Melvin's State PCRA Litigation

It is against this backdrop of these conflicting and competing accounts of the past state PCRA litigation that Melvin filed this federal habeas corpus petition on October 2, 2008. (Doc. 1.) From the outset of this litigation, this Court recognized the tension between AEDPA's exhaustion requirement and the imperative of prompt and

fair resolution of claims as a threshold issue in this case. Accordingly, the Court has ordered the parties in this federal habeas petition to both brief this issue, and provide status reports on the progress of this state PCRA litigation. (Docs. 28, 35, 42, and 50.) The parties have responded by filing status reports which provide a complete picture of the progress and posture of this litigation.(Docs. 47, 48, 51 and 52.)

These status reports reveal that the state court held a status conference in Melvin's PCRA litigation on January 14, 2010. (Id.) Following this conference the state court ordered Melvin to file an amended PCRA petition by March 2010. (Id.) Melvin complied with this direction by filing this amended petition on March 18, 2010. (Id.)

On June 8, 2010, the Respondents challenged certain aspects of this amended pleading, and on July 21, 2010, Melvin addressed these challenges by filing a revised and further amended PCRA petition. (Id.) Two days later, on July 23, 2010, the state court endeavored to hold a hearing on Melvin's PCRA petition. (Id.) This July 23, 2010, hearing, however, was marked by mutual recriminations and medical emergencies, with Melvin seeking to discharge his fourth PCRA counsel; complaining that he was not prepared for a hearing; demanding additional time for preparation; and experiencing a medical emergency, severe chest pains, which required him to be removed from court on a stretcher and taken by ambulance to a hospital. (Id.)

On October 4, 2010, the Commonwealth filed a motion to re-schedule this aborted PCRA hearing. Following a December 9, 2010, conference of counsel, the state court entered an order on December 15, 2010, setting further PCRA proceedings for March 2011, and directing the Petitioner and his counsel to fully prepare for this March 2011 hearing. Thus, in the past year substantial progress has been made in this previously stalled litigation. Indeed, in the span of the past 14 months greater progress has been achieved than was attained in the first 14 years of this litigation. Melvin has filed two revised and amended PCRA petitions, and two hearings have been scheduled in order to fully address these pending PCRA petitions.

It is against the background of this past delay and the current progress in his PCRA litigation that the parties come before this Court advancing competing views regarding the proper course for this federal habeas corpus proceeding. For his part, Melvin urges the Court to find that this past delay totally justifies excusing the statutory exhaustion requirement, a finding which would compel this Court to complete a task which has been commenced in a conscientious fashion by the state courts over the past year and conduct an evidentiary inquiry into Melvin's various complaints. In contrast, the Respondents point to the current progress of this PCRA litigation to insist that Melvin's petition should be dismissed as unexhausted.

We choose a third course. Because we find that the "previously-stalled state proceedings have resumed" and, "there is reliable evidence that the state action has been reactivated," Walker v. Vaughn, 53 F.3d 609, 615 (3d Cir.1995); Wallace v. Dragovich, 143 F.App'x. 413, 418 (3d Cir. 2005); Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir.2002), we believe that "[w]hen a previously stalled state action begins moving again, we [should] hold that a state remedy is, once again, available, and that the petitioner should exhaust it." Luckett v. Folino, 264 F.App'x 171, 173(3d Cir. 2008)(citations omitted). Therefore, we recommend, consistent with settled case law, that where, as here, previously-stalled state proceedings have resumed, we should "stay . . . consideration of [this] habeas petition[]...." Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir.2002).

## II.  Discussion

### A.  State Prisoner Habeas Relief–The Legal Standard

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by 28 U.S.C. § 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

**(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

**(A)** the applicant has exhausted the remedies available in the courts of the State;

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### (1.)  Substantive Standards For Habeas Petitions

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, a petition must satisfy exacting substantive standards to warrant relief. Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," § 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings led to a "fundamental defect which inherently results

in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See, e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to § 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

### (2). **Procedural Thresholds for Section 2254 Petitions**

#### (a). **Exhaustion of State Remedies**

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d 240, 250 (3d Cir. 2002).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system

of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

While this exhaustion requirement compels petitioners to have previously given the state courts, a fair "opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's] constitutional claim," Picard v. Connor, 404 U.S. 270, 276 (1971), this requirement is to be applied in a commonsense fashion. Thus, the exhaustion requirement is met when a petitioner submits the gist of his federal

complaint to the state courts for consideration, without the necessity that the petitioner engage in some "talismanic" recitation of specific constitutional claims. Evans, 959 F.2d at 1230-33. Similarly, a petitioner meets his obligations by fairly presenting a claim to the state courts, even if the state courts decline to specifically address that claim. See Dye v. Hofbauer, 546 U.S. 1(2005) (per curiam); Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004).

### (b) The Exhaustion Requirement and Petitions Containing Unexhausted Claims

Oftentimes, these petitions may either contain wholly unexhausted claims or contain what are referred to as "mixed" claims: petitions with both exhausted and unexhausted claims. In such instances, the court has several courses available to it. First, the court can dismiss the petition without prejudice, so that the petitioner can either return to state court and totally exhaust his claims, or proceed in federal court on a petition which raises only wholly exhausted issues. Rose v. Lundy, 455 U.S. 509 (1982). This total exhaustion approach facilitates the important goals of federalism and comity that are essential to the exhaustion rule, and allows for complete legal and factual development of these cases in the state legal system before petitions are presented in federal court.

However, because strict compliance with this total exhaustion rule can create procedural dilemmas for some petitioners who may be unable to fully exhaust state

remedies on mixed claim petitions before the one-year statute of limitations prescribed for state habeas petitions elapses, the courts have adopted another procedure which may be employed in a limited number of cases, a "stay and abeyance" procedure in which the federal habeas petition is stayed pending exhaustion of state remedies by the petitioner. <u>Rhines v. Weber</u>, 544 U.S. 269 (2005).

Yet, while granting a stay and abeyance is an available procedure, it is not a preferred course of action in these cases. Because a "stay and abeyance" procedure, if used too frequently, can undermine the policies favoring prompt and orderly resolution of state habeas petitions, the Supreme Court has held that:

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

<u>Rhines v. Weber,</u> 544 U.S. at 277. Therefore, in order to qualify for a stay and abeyance a petitioner should "satisf[y] the three requirements for a stay as laid out in <u>Rhines</u>: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics." <u>Heleva v. Brooks,</u> 581 F.3d 187, 192 (3d. Cir.2009).

**B.** **Melvin's Petition Should be Stayed and Held in Abeyance Pending The Completion of Melvin's Currently Active State PCRA Litigation**

These settled legal tenets suggest the proper approach to be taken in this case. At the outset, it is evident that the exhaustion doctrine applies to this case since Melvin's federal habeas petition clearly contains some legal claims as to which Melvin has not exhausted his state legal remedies. Thus, Melvin's federal pleading is the very model of an unexhausted petition which the court ordinarily should either stay or dismiss without prejudice, so that he can return to state court and totally exhaust these claims. Rose v. Lundy, 455 U.S. 509 (1982).

Melvin seeks to avoid this outcome by arguing that exhaustion of these state remedies on his part should be excused since the delay in litigating this case demonstrates the futility of exhausting those state remedies. Because of the strong policies favoring exhaustion of state remedies, petitioners who seek to be excused from this requirement must make an exacting showing. As the United States Court of Appeals for the Third Circuit has aptly observed:

> Under ordinary circumstances, a federal court may not entertain a petition for a writ of habeas corpus unless the petitioner has first presented each of his claims to the state's highest tribunal. See 28 U.S.C. §§ 2254(b), (c); Rose v. Lundy, 455 U.S. 509, 515-16(1982). Exhaustion, however, is not a jurisdictional matter but a matter of comity. See Story v. Kindt, 26 F.3d 402, 405 (3d Cir.1994). Federal courts need not defer to the state judicial

process when there is no appropriate remedy at the state level or when the state process would frustrate the use of an available remedy. Id.; 28 U.S.C. § 2254(b)(1)(B). We have held that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986). The existence of an inordinate delay does not automatically excuse the exhaustion requirement, but it does shift the burden to the state to demonstrate why exhaustion should still be required. Story, 26 F.3d at 405 (noting that this burden is "difficult to meet").

Lee v. Stickman, 357 F.3d 338, 341 (3d Cir. 2004).

In defining what type of delay constitutes an "inexcusable or inordinate delay" which may justify excusing the exhaustion requirement, the courts have looked at delays of years, not months. Thus, as the appellate court has explained:

We stated in Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986), that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." In that case, thirty-three months had passed after the petitioner's PCRA filing without resolution. Id. This, we found, excused the petitioner's failure to exhaust his state court remedies. Id. at 356. The thirty-three month delay in Wojtczak remains the shortest delay held to render state collateral proceedings ineffective for purposes of the exhaustion requirement.

Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir. 2002)(refusing to excuse exhaustion in the face of 27 month delay). See, e.g., Coss v. Lackawanna County Dist. Att'y, 204 F.3d 453, 460 (3d Cir.2000) (en banc) (seven year delay), rev'd on other grounds, 532 U.S. 394 (2001); Story v. Kindt, 26 F.3d 402, 406 (3d Cir.1994) (nine year delay). Yet,

justice in this setting is not reduced to a simple process of arithmetic. Instead, it has been held that: "delays of eleven, five, twelve and three years sufficient to excuse exhaustion. See Hankins, 941 F.2d at 247 (eleven years to decide motion to withdraw guilty plea sufficient to excuse exhaustion requirement); Burkett, 826 F.2d at 1218 (five year delay sufficient to excuse exhaustion); Codispoti v. Howard, 589 F.2d 135, 142 (3d Cir.1978) (twelve years to decide new trial motion); United States ex rel. Senk v. Brierley, 471 F.2d 657, 660 (3d Cir.1973) (three year delay in deciding PCHA petition)." Story v. Kindt, 26 F.3d 402, 405-6 (3d Cir. 1994). However, as time passes, the government's burden in justifying the delay increases, a burden that often "is difficult to meet." Id. at 406, citing, Burkett v. Cunningham, 826 F.2d 108, 1218 (3d Cir. 1987).

In this case, the past delay experienced by Melvin–which totals 14 years–is of sufficient duration to trigger a concern that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986). While "[t]he existence of an inordinate delay does not automatically excuse the exhaustion requirement, . . . it does shift the burden to the state to demonstrate why exhaustion should still be required," Lee v. Stickman, 357 F.3d 338, 341 (3d Cir. 2004)(citations omitted), and imposes a burden on the respondents that "is difficult to meet," Story v.

Kindt, 26 F.3d 402, 406 (3d Cir. 1994), to the extent that they seek outright dismissal of this petition on exhaustion grounds. Furthermore, indulging in extensive, evidentiary proceedings for the purpose of permitting the respondents to attempt to demonstrate that exhaustion should not be excused would actually yield an ironic result. In a quest to justify past delays, we would engage in litigation of collateral issues concerning who is responsible for those past delays, litigation that would likely ensure future delays in reaching the merits of Melvin's claims.

Yet, while the overall delay in the litigation of this PCRA case has been substantial, since January 2010, the state courts have moved promptly, scheduling conferences, conducting proceedings, entering orders, and holding hearings in the PCRA case. In light of the commendable level of activity that has been displayed by the Commonwealth since January 2010, we cannot say– at present– that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986). Quite the contrary, these recent developments strongly suggest a different course which we should follow. As the United States Court of Appeals for the Third Circuit has observed:"[i]n deciding whether to waive the exhaustion requirement, however, we generally take into account recent progress in the state court. When a previously stalled state action begins moving again, we generally hold that a state

remedy is, once again, available, and that the petitioner should exhaust it." Luckett v. Folino, 264 F.App'x 171, 173(3d Cir. 2008)(citations omitted). Therefore, it is recommended that the Court decline Melvin's invitation to declare the state PCRA process "effectively unavailable," Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986), and excuse compliance with this process.

At the same time, given the vagaries of this past state court litigation, we also believe that the Court should decline the Respondents' suggestion that Melvin's petition simply be dismissed as an unexhausted petition. Indeed, in a case such as this, where state proceedings had once stalled, but now appear to be proceeding forward, we are encouraged to stay the federal proceedings in favor of the completion of the state legal process, rather than dismiss the petition. As the United States Court of Appeals for the Third Circuit has observed in this regard: "Where, as here, previously-stalled state proceedings have resumed, we have 'instructed district courts to stay their consideration of habeas petitions....' Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir.2002) (citing Walker v. Vaughn, 53 F.3d 609, 615 (3d Cir.1995) ('As a matter of general practice, we assume that a district court which has excused exhaustion but has not yet embarked upon proceedings of substance will stay its hand once there is reliable evidence that the state action has been reactivated.'))." Wallace v. Dragovich, 143 F.App'x. 413, 418 (3d Cir. 2005).

In recommending a stay of proceedings, we recognize that

> [S]tay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

Rhines v. Weber, 544 U.S. at 277. See Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009) (in order to qualify for a stay and abeyance a petitioner should "satisf[y] the three requirements for a stay as laid out in Rhines: good cause, potentially meritorious claims, and a lack of intentionally dilatory litigation tactics.")

Our recommendation that this action be stayed, rather than dismissed, is shaped in part by our concern that "good cause" exists for the entry of a stay in this case. The stay and abeyance procedure adopted by the Supreme Court in Rhines was intended to avoid unfair prejudice to habeas petitioners in those limited cases where completion of the habeas exhaustion requirement might result in some unfair prejudice. The unusual facts of this case, and the extraordinary delays experienced in this litigation constitute the type of exceptional circumstances that may provide good cause for a stay. See Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009) ("good cause" often tied

to concerns that requiring exhaustion will result in a prisoner's petition being time-barred under § 2244).

In this case, we have concerns that a dismissal of this unexhausted petition would result in the statute of limitations ultimately barring litigation of these claims on their merits once Melvin has properly exhausted his state remedies. The danger which the statute of limitations presents to this particular *pro se* litigant can be readily illustrated by a brief consideration of how the statute of limitations would apply to this case. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244 established a one-year statute of limitations on the filing of habeas petitions by state prisoners. In pertinent part, § 2244(d)(1) provides as follows:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

See Miller v. New Jersey State Dept. of Corrections 145 F.3d 616, 617 (3d Cir.1998).

The calculation of this limitations period is governed by a series of well-defined rules. At the outset, these rules are prescribed by statute, specifically 28 U.S.C. § 2244(d)(2), which provides that:

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000).

In assessing § 2244(d)(2)'s tolling provision relating to the time when a case is "pending" state review, it is also clear that "the term 'pending' must include the time between a court's ruling and the timely filing of an appeal, [and] 'pending' must include the time during which an appeal could be filed even if the appeal is not eventually filed." Swartz, 204 F.3d at 424. Thus, the courts have construed this tolling provision in a forgiving fashion, one which enables petitioners to toll their filing deadlines for the time periods in which they could have sought further appellate review of their cases, even if they did not, in fact, elect to seek such review. For

example, with respect to a petitioner like Melvin, who pursued a direct appeal to the

state Supreme Court:

> Section 2244 of AEDPA states that the statute of limitations begins on "the date on which the judgment [to be reviewed] became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Usually that provision is applied to hold that the limitations period runs from the date when a prisoner's time for seeking certiorari from the United States Supreme Court expired. See, e.g., Kapral v. United States, 166 F.3d 565, 575 (3d Cir.1999).

Heleva, 581 F.3d at 192-193. Therefore, this statutory tolling period embraces the

duration of all of Melvin's direct state criminal appeals, plus an additional 90 days to

allow for a potential petition for writ of certiorari to the United States Supreme Court,

a writ that Melvin apparently never sought. All of this time would be tolled under §

2244(d)(2) from any statute of limitations calculations. See Swartz, 204 F.3d at 419.

In this case application of these principles would mean that Melvin's federal habeas

petition should have been filed within one year and 90 days after the denial of his

petition for allowance of appeal by the Pennsylvania Supreme Court in 1992.

While Melvin did not file a federal habeas petition within this time period, he

did file a state PCRA petition in 1996. Normally, a "properly filed application for

State post-conviction or other collateral review" also tolls AEDPA's one-year

limitations period. However, for purposes of tolling the federal habeas statute of

limitations, a "properly filed application for State post-conviction or other collateral

review" only includes applications which are filed in a timely fashion under state law. Therefore, if the petitioner was delinquent in seeking state collateral review of his conviction, that tardy state pleading will not be considered a "properly filed application for State post-conviction or other collateral review" and will not toll the limitations period. Pace v. DiGuglielmo, 544 U.S. 408, 412-14 (2005); Long v. Wilson, 393 F.3d 390, 394-95 (3d. Cir. 2004).

Beyond this tolling period mandated by statute, it has also been held that AEDPA's one-year limitations period is not a jurisdictional bar to the filing of habeas petitions; Miller, 145 F.3d at 617-18, and therefore is subject to equitable tolling. Id. at 618-19. Yet, while equitable tolling is permitted in state habeas petitions under AEDPA, it is not favored. As the United States Court of Appeals for the Third Circuit has observed: "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.' Generally, this will occur when the petitioner has 'in some extraordinary way ... been prevented from asserting his or her rights.' The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' Mere excusable neglect is not sufficient." Id. at 618-19 (citations omitted). Indeed, it has been held that only:

> [T]hree circumstances permit[] equitable tolling: if
> (1) the defendant has actively misled the plaintiff,

(2) if the plaintiff has in some extraordinary way been prevented from asserting his rights, or

(3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum.

Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001)

Applying these principles, it is apparent that Melvin could face a grave risk that the federal one-year statute of limitations would preclude him from having this petition considered on its merits if this case is dismissed rather than stayed. At a minimum, where there is substantial uncertainty regarding the application of AEDPA's statute of limitations to Melvin's petition, it appears that there is "good cause" justifying a stay in this case.

As for the remaining factors which we must consider in deciding whether a stay is appropriate, none of these factors weighs in such a compelling way against the entry of a stay in this case as to overcome the "good cause" that is shown here. In addition to determining whether "good cause" exists for staying this case, we must also examine two other criteria established by the Supreme Court in Rhines for entry of a stay, making a determination regarding whether the petition contains "potentially meritorious claims, and [whether the record shows] a lack of intentionally dilatory litigation tactics." Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009).

Neither of these factors calls for the denial of a stay in this case, where good cause clearly exists to stay this matter pending completion of the state litigation. For example, on the current, incomplete record we cannot say that Melvin's claims are completely lacking in merit. Therefore, it is presently unclear whether Melvin's case presents any "potentially meritorious claims." Id.    In addition, while the Respondents argue forcefully that much of the delay in this case is directly attributable to Melvin's bizarre choice of litigation tactics, we are not prepared–at present– to find that Melvin has indulged in "intentionally dilatory litigation tactics," which would justify dismissal of his unexhausted claims. Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009).[1]

**IV**.    **Recommendation**

While Melvin's state litigation has been plagued by extensive delays spanning 14 years, determining which party bears responsibility for those delays is far from clear. Moreover, recent developments in this case reveal that this "previously-stalled

---

[1]While we reach this conclusion at present we do so without prejudice to Respondents requesting dismissal of the petition in the future if Melvin's conduct in future state PCRA litigation demonstrates that he is engaging in "intentionally dilatory litigation tactics," which would justify dismissal of his unexhausted claims. Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009). We also make this recommendation without prejudice to the Petitioner requesting in the future that exhaustion be excused if the Commonwealth's approach to this litigation in the future revealed "inexcusable or inordinate delay by the state in processing claims for relief [which] may render the state remedy effectively unavailable." Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986).

state proceedings have resumed" and, "there is reliable evidence that the state action has been reactivated." Walker v. Vaughn, 53 F.3d 609, 615 (3d Cir.1995); Wallace v. Dragovich, 143 F.App'x. 413, 418 (3d Cir. 2005); Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir.2002). Thus, "[w]hen a previously stalled state action begins moving again, . . . a state remedy is, once again, available, and that the petitioner should exhaust it." Luckett v. Folino, 264 F.App'x 171, 173(3d Cir. 2008)(citations omitted). Accordingly, "[w]here, as here, previously-stalled state proceedings have resumed, we [should] 'stay their consideration of habeas petitions....' Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir.2002) (citing, Walker v. Vaughn, 53 F.3d 609, 615 (3d Cir.1995) ('As a matter of general practice, we assume that a district court which has excused exhaustion but has not yet embarked upon proceedings of substance will stay its hand once there is reliable evidence that the state action has been reactivated.'))." Wallace v. Dragovich, 143 F.App'x. 413, 418 (3d Cir. 2005).

Therefore, for the foregoing reasons IT IS RECOMMENDED both that: (1) Respondents' request to dismiss this petition as unexhausted be denied; and (2) the Petitioner's request that we find exhaustion excused also be denied. Instead, IT IS RECOMMENDED that this is a case where the proper course of action would be to stay the petition and hold it in abeyance pending completion of the state criminal litigation.

Further, in recognition of the delays which have previously plagued this state court litigation, IT IS RECOMMENDED that the parties be required to provide status reports every 90 days on the progress of this state PCRA litigation so this Court can make an informed judgment regarding whether to either enforce or excuse this exhaustion requirement at some time in the future if either: (1) Melvin's conduct in future state PCRA litigation demonstrates that he is engaging in "intentionally dilatory litigation tactics," which would justify dismissal of his unexhausted claims. Heleva v. Brooks, 581 F.3d 187, 192 (3d. Cir.2009); or (2) the Commonwealth's approach to this litigation in the future revealed "inexcusable or inordinate delay by the state in processing claims for relief [which] may render the state remedy effectively unavailable." Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir.1986).

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254, and the Response in Opposition to this Petition, IT IS RECOMMENDED that the Petition be STAYED AND HELD IN ABEYANCE, pending completion of the state litigation of Melvin's PCRA petition.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition

of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 16th day of March, 2011.

_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge